W. I. GRAY and Another v. BUILDING TRADES COUNCIL and Others.[1][2]

December 24, 1903.

Nos. 13,652, 13,657—(130).

**Temporary Injunction.**

The granting of a temporary injunction to plaintiff by the trial court, after issue joined, and upon the pleadings and affidavits of both parties, is, for the purpose of reviewing the action of the court, deemed to be, in effect, a finding that the allegations of the complaint upon which the writ is prayed for are true; and, upon appeal from the order granting the writ, this court will review the affidavits only to the extent of determining whether they fairly tend to support the allegations of the complaint.

**Boycott.**

A boycott is a combination of several persons to cause loss or injury to a third person by causing others, against their will, to withdraw from him their beneficial business intercourse, through threats that, unless a compliance with their demands be made, the persons forming the combination will cause loss or injury to him, or an organization formed to exclude a person from business relations with others by persuasion, intimidation, or other acts which tend to violence, and thereby cause him, through fear of resulting injury, to submit to dictation in the management of his affairs.

**Same.**

Intimidation, coercion, or threats of injury are essential elements of a boycott, but what would constitute acts of that character must depend upon the facts of each particular case.

[1] JOHN TREVOR v. BUILDING TRADES COUNCIL and Others.
WILLIAM C. THOMPSON and Others v. SAME.
WILLIAM CHAPMAN v. SAME.
GUGLER ELECTRIC MANUFACTURING COMPANY v. SAME.
W. C. HARTIG and Another v. SAME.

PER CURIAM.

These cases are identical with Gray v. Building Trades Council, and are controlled by the decision there made; and it is therefore ordered that the order appealed from be in each of these cases modified as indicated in that opinion.

[2] Reported in 97 N. W. 663, 1118.

**Constitutional Rights of Citizens.**

> The constitution guaranties to every citizen liberty and a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; and a person's business, occupation, or calling is, aside from the chattels or money employed therein, property, within the meaning of the law, and entitled to its protection.

**Labor Union.**

> Labor organizations or unions are not unlawful, but are legitimate and proper for the advancement of their members and those dependent upon them. The members thereof may singly, or in a body, quit the service of their employer for the purpose of bettering their condition, and may by peaceful means persuade others to join them, and, as a means to that end, may refuse to allow their members to work in places where non-union labor is employed. But boycotting, as defined above, is an unlawful conspiracy, and may be restrained by injunction.

**Modification of Injunction.**

> The temporary injunction ordered issued by the trial court in the cases here before the court *held* to infringe upon the rights of defendants in the respects mentioned in the opinion.

Action in the district court for Hennepin county to restrain defendants, Building Trades Council, and International Brotherhood Electrical Workers of America, Local Union No. 292, both unincorporated associations, and the members thereof, from interfering in any manner with the business of plaintiffs by means of threats directed against, or intimidation of, the customers of plaintiffs. After a hearing, pursuant to an order to show cause, a restraining order pendente lite was made, W. R. Cray, J., in form as set forth in the opinion. From this order defendants appealed. Modified.

*Thomas Canty, Herman Johnson,* and *Hall & Kolliner,* for appellants.

There is no allegation or even suggestion in the record that defendants have created or attempted to create any monopoly, or have violated any statute by confederating together; and even if they had, an action for an injunction could not be maintained against them therefor by plaintiffs. See Pidcock v. Harrington, 64 Fed. 821; Greer v. Stoller, 77 Fed. 1; Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 86 Fed. 407; Southern I. Exp. Co. v. U. S. Exp. Co., 88 Fed. 659, affirmed in 92 Fed. 1022.

Neither the evidence nor pleading sustain the injunctions. The complaints were all verified on information and belief and therefore are of no force as evidence to support an injunction. Armstrong v. Sanford, 7 Minn. 34 (49) and cases cited; McRoberts v. Washburne, 10 Minn. 8 (23); 10 Enc. Pl. & Pr. 929. Where there is a manifest preponderance of the weight of the evidence in the affidavits against the decision of the judge on a motion, the order will be reversed on appeal. Rosenberg v. Burnstein, 60 Minn. 18; First Nat. Bank v. Randall, 38 Minn. 382; Blandy v. Raguet, 14 Minn. 179, (243).

Where the equities of the complaint are fully and positively denied in the answer or the affidavits opposing the motion for an injunction, it is, in all but a few exceptional cases, error to grant the injunction. Pineo v. Heffelfinger, 29 Minn. 183; Moss v. Pettingill, 3 Minn. 145 (217); Montgomery v. McEwen, 9 Minn. 93 (103); Knoblauch v. City of Minneapolis, 56 Minn. 321; 10 Enc. Pl. & Pr. 1000, 1001, 1048.

The men have a right to organize and act in concert through their organization and its officers in quitting or threatening to quit work for the purpose of furthering their own interest as an organization. Bohn Mnfg. Co. v. Hollis, 54 Minn. 223; Ertz v. Produce Exchange, 79 Minn. 140; Delz v. Winfree, 80 Tex. 400; Graham v. St. Charles, 47 La. An. 1656; Robinson v. Texas (Tex. Civ. App.) 40 S. W. 343.

Workmen either as individuals or combined together as a union, may refuse and threaten to refuse to work with nonunion men, or in the same general work, undertaking or business in which nonunion men are employed, and such refusal or threatened refusal is not, in law, considered a boycott, no matter how much or how often it interferes with other people's business or contracts. 18 Am. & Eng. Enc. 80, 81, 84, 86–90 (2d Ed.); 6 Am. & Eng. Enc. 872, 873 (2d Ed.); Longshore v. Howell, 26 Ore. 527; McCauley v. Tierney, 19 R. I. 255; Heywood v. Tillson, 75 Me. 225; Commonwealth v. Hunt, 4 Metc. (Mass.) 111, 134; Bowen v. Matheson, 96 Mass. 499; Walker v. Cronin, 107 Mass. 555; Carew v. Rutherford, 106 Mass. 1; Snow v. Wheeler, 113 Mass. 179; National v. Cumming, 170 N. Y. 315; Rogers v. Evarts, 17 N. Y. Supp. 264; Wunch v. Shankland, 59 App. Div. 482; Tallman v. Gaillard, 27 Misc. (N. Y.) 114; Reform Club v. Laborers' Union, 29 Misc. (N. Y.) 247; Davis v. United, 28 App. Div. 396; Payne v. Western, 13 Lea, 507; Cote v. Murphy, 159 Pa. St. 420; Clemitt v. Watson

(Ind.) 42 N. E. 367; Graham v. St. Charles, supra; Arthur v. Oakes, 63 Fed. 310, 317; Continental Ins. Co. v. Board, 67 Fed. 310; Mogul v. McGregor, L. R. 23 Q. B. Div. 598, 613; Allen v. Flood, 67 L. J. Q. B. Div. (N. S.) 119, App. Cas. 1; Huttly v. Simmons, 67 L. J. Q. B. Div. (N. S.) 213; Glamorgan v. South Wales, 71 L. J. K. B. Div. (N. S.) 1001; Perrault v. Gauthier, 28 Can. Sup. 241; Brewster v. Miller, 101 Ky. 368; Baker v. Metropolitan (Ky.) 64 S. W. 913; Baker v. Sun (Ky.) 64 S. W. 967.

*Harlan P. Roberts, W. W. Bardwell, Hale & Montgomery,* and *W. E. Hale,* for respondents.

Granting an injunction pendente lite is a matter in the sound discretion of the trial court. Sanitary Reduction Works v. California Reduction Co., 94 Fed. 693; Southern Pac. Co. v. Earl, 82 Fed. 690, 692; Myers v. Duluth Transfer Ry. Co., 53 Minn. 335, 337; Gorton v. Town of Forest City, 67 Minn. 36; McGregor v. Case, 80 Minn. 214; Jersey City v. Cassidy (N. J. Eq.) 53 Atl. 230.

Plaintiffs were subjects of a boycott. Crump v. Commonwealth, 84 Va. 927, 940; Toledo A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 Fed. 730, 738, and, under all the authorities, a boycott is illegal and a proper subject for injunction. Casey v. Cincinnati Typographical Union, 45 Fed. 135; Hopkins v. Oxley Stave Co., 83 Fed. 912; Thomas v. Cincinnati, N. O. & T. P. Ry. Co., 62 Fed. 803.

Acts prohibited by the injunction must be considered in the light of the unlawful purpose for which they are being committed. U. S. v. Kane, 23 Fed. 748; Toledo A. A. & N. M. Ry. Co. v. Pennsylvania Co., supra; Barr v. Essex, 53 N. J. Eq. 101; Allis Chalmers Co. v. Reliable Lodge, 111 Fed. 264, 268; Gatzow v. Buening, 106 Wis. 1.

Threats of intimidation can occur without any resort to violence, and such threats and intimidation may be made the subject of injunction. Barr v. Essex, supra; Plant v. Woods, 176 Mass. 492; Vegelahn v. Guntner, 167 Mass. 92, 97; U. S. v. Kane, supra.

Interference with existing relations between employer and employees is illegal and a proper subject for injunction, even though there is no continuing contract between the parties. Moran v. Dunphy, 177 Mass. 485; Jersey City v. Cassidy, supra; Lucke v. Clothing Cutters, 77 Md. 396; Temperton v. Russell (1893) 1 Q. B. Div. 715.

Injunctions are necessarily stated in somewhat broad terms; but this injunction is limited in every instance to acts which are being committed in pursuance of the unlawful conspiracy which is set out in the complaint, for the purpose of injuring or crippling the business of the plaintiffs, and was properly issued. Beck v. Railway, 118 Mich. 497; Barr v. Essex, supra; Allis Chalmers Co. v. Reliable Lodge, supra.

BROWN, J.

Action to restrain and enjoin defendants from boycotting plaintiffs in their business. Six separate actions of the same nature were brought at the same time by different plaintiffs against the same defendants, in each of which the trial court made an order that a temporary injunction issue, restraining and enjoining defendants in the respects hereinafter mentioned, from which order defendants appealed to this court. The cases were submitted here together and upon one set of briefs.

The facts are as follows: Plaintiffs are electrical contractors and engineers, and their business consists in installing wires and other electrical apparatus in buildings and structures, and such business and affairs as are incidental thereto. It is alleged in the complaint in this connection (substantially the same allegations being found in the complaint in each of four of the actions) that plaintiffs have built up a large and profitable business in their line; that the customers with whom they are doing it are necessary and essential to the successful conduct of the same; that such business is a source of profit, and from which they earn a livelihood; that defendant Building Trades Council is an unincorporated association consisting of a large number of delegates from numerous other associations, known as "labor unions," all of which are located in the city of Minneapolis; that each labor union or organization selects a certain number of delegates, who represent and act for it, who become members of and constitute the Building Trades Council, which, so composed, possesses and exercises control over all the unions so represented; that, by virtue of an arrangement between the unions, any action taken or order given by the Trades Council is binding and obligatory upon each of the several unions so represented, and forming part of the council; that each individual member assumes an obligation to abide by and obey all

orders emanating from the Trades Council, in default of which he subjects himself to a fine of $5; that one of the unions so associated with the Trades Council is the International Brotherhood of Electrical Engineers of America, Local Union No. 292; that this brotherhood is composed of employees of firms engaged in a business similar to that of plaintiffs; that, in the language of the union, certain firms and corporations are known as "fair," and others as "unfair"; that those classified as "unfair" are such as employ nonunion labor, and those classified as "fair" limit their employees to union laborers; that defendant Building Trades Council has recently placed all of the plaintiffs upon the "unfair" list; that defendants have entered into a conspiracy and combination for the purpose of injuring the business of plaintiffs, and in pursuance of which defendants have appeared before prospective customers, and threatened such customers that, if they attempted to do business with plaintiffs, defendants would make it impossible to transact business with them; that on May 15, 1903, defendants, in pursuance of such conspiracy and combination, appeared before a committee in charge of the affairs of the Minneapolis Industrial & Amusement Association, and declared that if it should give contracts for certain electrical wiring, which the association desired to have done, to plaintiffs, or either of them, the Trades Council would see that the association would be unable to obtain men for the construction of the booths and other buildings contemplated and necessary for the carnival and fair to be given by the association. The complaint further alleges that at the time said threats were made by the Trades Council the association was intending to make contracts for the electrical work with plaintiffs; that, but for the intimidation and threats of the Trades Council, the contract for such work would have been let to them, in the performance of which plaintiffs would have made a profit.

The same facts are alleged in the complaints in the other two actions, except as to the carnival association; and on this subject, namely, the particular interference with plaintiffs' business complained of, it is alleged in the Gugler Manufacturing Company case that plaintiff in that action was engaged in carrying out a contract with one Smith, the proprietor of the Brunswick Hotel, in Minneapolis; that the contract required plaintiff to install wires and other electrical apparatus

in the building; that other artisans, consisting of carpenters, plasterers, and painters, were engaged in and about the same building; that a representative of the Trades Council called upon Smith, and notified him that, if plaintiff was permitted to continue work on the building, the council would order all union men under its control, and employed in and about the building, to quit work, and that the council would see to it that Smith would be unable to complete the contract. Smith then notified plaintiff of these threats and representations, and urged upon it the necessity of cancelling its contract for the electrical work upon such building, which plaintiff thereafter, in view of the situation, consented to do. In the Hartig & Hellier case a state of affairs is presented very similar to the Gugler case. The complaints further allege that plaintiffs have no adequate remedy at law, and that defendants are insolvent and unable to respond in damages, and conclude with a prayer that defendants be restrained and enjoined from carrying out the threats complained of.

The answer in each case admits all the allegations of the complaints respecting the organization of defendant Trades Council, its objects and purposes, its connection with the International Brotherhood of Electrical Workers of America, and in all other material respects denies generally the allegations of the complaints. It specifically denies that defendants, or any of them, have entered into any conspiracy or combination for the purpose of injuring or destroying the business of plaintiffs, or that pursuant to a conspiracy or combination defendants, or any of them, have appeared before prospective customers of plaintiffs, or any other person or persons, or made any of the threats set forth in the complaint or otherwise.

The actions came on before the court below on plaintiffs' application for a temporary injunction enjoining and restraining defendants, and each of them, from the threatened acts, and were heard upon the pleadings and affidavits in support and in denial of the allegations of the complaints. After due consideration, the court made an order that a temporary injunction issue in each action restraining and enjoining defendants, and each of them, from doing the certain acts hereinafter referred to.

It appears from the affidavits, in addition to the matter pleaded, that plaintiffs, with a number of other electrical contractors, formed an

91 M.—12

association among themselves, and entered into an agreement with each other, agreeing among other things upon uniform conditions of service, a scale of wages, and that there should be no discrimination in respect to the persons employed because they might or might not be members of some labor union or organization; in short, they proposed to employ nonunion labor if, in their judgment, their interests suggested it.

No controversy ever arose, so far as appears in the record, between plaintiffs and any of their employees, or defendants, as representatives of labor unions, as to the amount of wages paid or to be paid their employees. The whole controversy rests on the effort of defendants to compel plaintiffs to employ union labor only. It is urged that the efforts made in this direction were legitimate, and were resorted to for the purpose of furthering the interests of those represented by the Trades Council and the electrical union, and without malicious intent to injure the business of plaintiffs; that, if injury in fact resulted to plaintiffs, it was incidental to the exercise of a lawful right by defendants. The complaints allege facts showing a boycott, and the order of the trial court granting a temporary injunction must be deemed, for the purposes of this review, as a finding that the facts so alleged are true.

While the affidavits filed in support of the complaints do not make out a strong case against defendants, we are not required on this appeal to go further than would be necessary in reviewing the findings of the trial court in ordinary actions, and only to the extent of determining whether the affidavits fairly tend to support the allegations of the complaints. We therefore adopt the allegations of the complaints as the basis for further consideration of the appeal. As the particular questions presented have not been directly involved in any case heretofore before us, we shall briefly consider some of the legal principles applicable thereto.

Probably the first case to be found in the books presenting the question whether it is an unlawful conspiracy for a number of employees to quit their employment unless their demand for higher wages be complied with arose in England in 1721. Tubwomen v. Brewers of London, 3 Columbia L. R. 447. It was there held a criminal conspiracy for two or more persons to band themselves together for the purpose

of enforcing their demands for higher wages. It was conceded that one might thus abandon his employment, unless his demand was complied with, but that it was unlawful for several to conspire together for that purpose. The same rule was applied in an early case (1809) in New York in an action entitled "Case of Journeymen Cordwainers," reported in Yates' Select Cases, 111. But few reported cases are found between the dates of those decisions and a comparatively recent period wherein questions like those here involved have been considered; though in recent years, owing to the continued strife between employer and employee, the subject has been brought to the attention of the courts frequently, and in various phases.

An examination of the reports discloses no little conflict in the authorities, but the rule announced in the two early cases just referred to is not the modern law. A strike for the purpose of securing better wages or otherwise bettering the condition of the strikers is not unlawful, though the result thereof is a combination between the striking employees, and results incidentally in the injury of others. Bohn Mnfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119. The courts very generally refuse to interfere by injunction to prevent such action. But a boycott, as generally understood, is held by nearly all the authorities to be an unlawful conspiracy, and subject to restraint by a court of equity. A boycott may be defined to be a combination of several persons to cause a loss to a third person by causing others against their will to withdraw from him their beneficial business intercourse through threats that, unless a compliance with their demands be made, the persons forming the combination will cause loss or injury to him; or an organization formed to exclude a person from business relations with others by persuasion, intimidation, and other acts, which tend to violence, and thereby cause him through fear of resulting injury to submit to dictation in the management of his affairs. Such acts constitute a conspiracy, and may be restrained by injunction. 5 Cyc. L. 995; Crump v. Commonwealth, 84 Va. 927, 6 S. E. 620; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co. (C. C.) 54 Fed. 730; Barr v. Essex, 53 N. J. Eq. 101, 30 Atl. 881; State v. Stewart, 59 Vt. 273, 9 Atl. 559; Gatzow v. Buening, 106 Wis. 1, 81 N. W. 1003; Casey v. Cincinnati Typographical Union (C. C.) 45 Fed. 135; Frank v. Herold, 63 N. J. Eq. 443, 52 Atl. 152.

In Hopkins v. Oxley Stave Co., 83 Fed. 912, 28 C. C. A. 99, 104, Judge Thayer, speaking for the Court of Appeals of the Eighth Circuit, said: "While the courts have invariably upheld the right of individuals to form labor organizations for the protection of the interests of the laboring classes, and have denied the power to enjoin the members of such associations from withdrawing  *  *  *  either singly or in a body, even where such withdrawal involves a breach of contract, *  *  *  yet they have very generally condemned those combinations usually termed 'boycotts,' which are formed for the purpose of interfering, otherwise than by lawful competition, with the business affairs of others, and depriving them, by means of threats and intimidation, of the right to conduct the business in which they happen to be engaged, according to the dictates of their own judgments."

In the case of Moores v. Bricklayers' Union, 23 Wkly. Cinc. Law Bul. 48, it appears that a labor union became involved in some controversy with one Parker concerning various matters, and, in order to bring Parker to their terms, the union notified materialmen that any one selling to him would be boycotted. Moores, plaintiff in the action, persisted in selling to Parker notwithstanding this notice, and the union promptly notified all of Parker's customers or prospective customers that none of its members would work Moores' material, thereby causing serious damage to the business of Moores. There were no acts or threats of violence shown, but the court held that the acts of the members of the union amounted to an unlawful conspiracy, and a recovery against them was upheld.

While the question of boycott was not involved in the case of Ertz v. Produce Exchange, 79 Minn. 140, 81 N. W. 737, the principles of the law applicable thereto were involved and discussed by the court. It was there held, upon facts showing that a dealer in farm produce had established a profitable business, and that defendants had conspired to induce others not to deal with him, it not appearing that their interference with his business was to further any legitimate interests of their own, but done maliciously to injure him, that it was a conspiracy and actionable. The court there said: "But one man singly, or any number of men jointly, having no legitimate interests to protect, may not lawfully ruin the business of another by maliciously inducing his patrons and third parties not to deal with him." The decision in that

case is in line with the authorities generally, and places this court with the weight of authority in holding that boycotts are illegal.

The case of Bohn Mnfg. Co. v. Hollis, supra, is not here in point. In that case certain retail dealers in lumber agreed with each other not to deal with wholesale dealers who sold building material direct to consumers or contractors. It appeared that the plaintiff therein had sold certain material to contractors, and the defendants threatened to inform all members of the retail association of the fact, and plaintiff brought that action to restrain them from so doing, on the ground that it was a conspiracy to injure its business. The court held otherwise, but the decision is clearly put on the ground that the action of the retail dealers was, in effect, a strike, and not restrainable in equity. They intended only to inform members of their association of the action of plaintiff in selling direct to the contractors, and there was no claim made of any boycott, as in the case at bar.

The rule on this subject is the same in England as in this country. Temperton v. Russell (1893) 1 Q. B. Div. 715. A careful examination of the English cases to which our attention has been called, and of others, discloses that Allen v. Flood, 17 Eng. Rul. Cas. 284, has been departed from by the House of Lords, and does not now express the law of that country. Quinn v. Leathem, L. J. 1901, P. C. 76. Intimidation and coercion are essential elements of a boycott. It must appear that the means used are threatening and intended to overcome the will of others and compel them to do or refrain from doing that which they would or would not otherwise have done.

What amounts to coercion, intimidation, or threats of injury, must necessarily depend upon the facts of each particular case. Plant v. Woods, 176 Mass. 492, 57 N. E. 1011; Sherry v. Perkins, 147 Mass. 212, 17 N. E. 307. In Barr v. Essex, 53 N. J. Eq. 101, 122, 30 Atl. 881, it was said that: "The clear weight of authority undoubtedly is that a man may be intimidated into doing or refraining from doing [a particular act] by fear of loss of life or injury to health or limb; and the extent of this fear need not be abject, but only such as to overcome his judgment, or induce him not to do, or to do, that which otherwise he would have done or have left undone." Intimidation, within the meaning of the law, is not necessarily limited to threats of violence to person or property. A combination between persons merely to regu-

late their own conduct and affairs is allowable, and a lawful combination, though others may be indirectly affected thereby; but a combination to do injurious acts, expressly directed to another by way of intimidation or constraint, either of himself or of persons employed, or seeking to be employed, by him, is outside of allowable competition and unlawful. Vegelahn v. Guntner, 167 Mass. 97, 44 N. E. 1077. The interference is held by many of the authorities unlawful although it does not affect existing contract relations. The wrongful interference with one's business and prospective customers is as much an infringement of his rights as though contractual relations actually existed and were interfered with. Jersey City v. Cassidy (N. J. Eq.) 53 Atl. 230; Addison, Torts, 7.

In restraining boycotts, the authorities proceed on the theory that they are unlawful interferences with property rights. The constitution of our state guaranties liberty to every citizen, and a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; and the rights so guarantied are fundamental, and can be taken away only by the law of the land, or interfered with, or the enjoyment thereof modified, only by lawful regulations adopted as necessary for the general public welfare. As remarked by Judge Bradley in the "Slaughter House Cases," 16 Wall. 36, 116, "For the preservation, exercise, and enjoyment of these rights, the individual citizen, as a necessity, must be left free to adopt such calling, profession, or trade as may seem to him most conducive to that end. * * * This right to choose one's calling is an essential part of that liberty which it is the object of government to protect; and a calling, when chosen, is a man's property and right. Liberty and property are not protected where these rights are arbitrarily assailed." A person's occupation or calling, by means of which he earns a livelihood and endeavors to better his condition, and to provide for and support himself and those dependent upon him, is property within the meaning of the law, and entitled to protection as such; and as conducted by the merchant, by the capitalist, by the contractor or laborer, is, aside from the goods, chattels, money, or effects employed and used in connection therewith, property in every sense of the word. Labor may organize, as capital does, for its own protection and to further the interests of the laboring class. They may strike, and persuade and induce

others to join them, but when they resort to unlawful means to cause injury to others with whom they have no relation, contractual or otherwise, the limit permitted by the law is passed, and they may be restrained.

It follows from what has been said that the learned trial court was justified in holding that defendants were guilty of a boycott, and ordering the issuance of a temporary injunction restraining them therefrom.

We come, then, to the question whether the contention of defendants, to the effect that the order of the trial court is too broad and restrains acts other than of boycotting, is well taken. The order of the court is as follows:

> "Said injunction shall specifically enjoin said defendants and each of them, their members, agents, and employees, from in any manner interfering with the business of the plaintiffs by means of threats or intimidation, of any kind or nature, directed against the customers or prospective customers of said plaintiffs.

> "Said injunction shall specifically enjoin the said defendants, council and brotherhood, their members, agents, and employees, and each and every of them, from interfering with the customers or prospective customers of plaintiffs by threats of any kind or nature, and particularly from notifying such customers or prospective customers and patrons of plaintiffs that plaintiffs are unfair.

> "Said injunction shall specifically enjoin said defendants, council and brotherhood, their members, agents, representatives, and employees, and each and every of them, from going upon the premises where plaintiffs are engaged or employed, for the purpose of interfering with the business of plaintiffs, and pursuant to said purpose, from ordering and directing or notifying men belonging to the various allied unions to desist from work upon said premises by reason of the fact that plaintiffs are employed thereon."

As already stated, it was proper for the trial court to enjoin defendants from all acts amounting to a boycott, and the question presented is whether the order of the trial court goes beyond this in scope and effect.

The first subdivision of the order restrains and enjoins defendants, their members and agents, from in any manner interfering with the business of plaintiffs by means of threats or intimidation, of any kind, directed against their customers or prospective customers. . The second subdivision enjoins them from interfering with the customers, or prospective customers, of plaintiffs, by threats of any kind or nature, *"and particularly from notifying such customers or prospective customers that plaintiffs are unfair."* We are of opinion that neither of these restraining clauses, except the part we have italicized, goes beyond or restrains defendants from acts other than boycotting, and were therefore proper. It is immaterial whether contract relations actually existed between plaintiffs and their customers at the time, for it would be just as injurious and destructive to plaintiffs' business to prevent them by such means from obtaining customers with whom they could enter into contracts as to interfere by unlawful threats or intimidation and cause existing contract relations to be broken. It is plaintiffs' business as a whole that the law protects, and not some particular transaction involved therein. If a notification to such customers, actual or prospective, that plaintiffs are "unfair," portends injury to them or plaintiffs, and such as to bring the case within the rule against boycotting, it was properly made a part of the temporary injunction. Beck v. Railway, 118 Mich. 497, 77 N. W. 13.

Whether such a notification would in any case amount to a threat or intimidation must be determined from all the facts and circumstances of each particular case. Such notice might have special significance in a particular case, and have no meaning in another. But the complaints before us, by which we are controlled in determining the case, there being no finding other than in effect that their allegations are true, contain no allegations that the mere notification of customers that plaintiffs are "unfair" has any special significance, that it portended injury, or was intended as a threat or intimidation, and for this reason we hold that the court below was not justified in making this an element of the injunctional order. In other respects the provisions of the order must be taken to cover and include acts constituting an unlawful conspiracy or boycott—nothing further—and are not open to the objections urged against them by defendants.

As to the third subdivision, we are of opinion that the acts there attempted to be restrained are such as might lawfully be committed, and are not subject to equitable control. It is fair to the trial judge to say, however, in this connection, that the order was drawn by plaintiffs' attorney, as is usual in such cases, and was undoubtedly adopted by him as covering only the case made by the complaints. But it goes beyond this, and restrains acts other than acts constituting boycotting. This particular provision specifically enjoins defendants, their members, agents, and representatives, from going upon the premises where plaintiffs are employed, for the purpose of ordering, directing or notifying men belonging to the various allied unions to desist from work upon the premises by reason of the fact that plaintiffs are employed thereon.

The authorities, as already noted, very generally hold that a strike is not unlawful, that members of labor unions may singly or in a body quit the service of their employer, and for the purpose of strengthening their association may persuade and induce others in the same occupation to join their union, and, as a means to that end, refuse to allow their members to work in places where nonunion labor is employed. 18 Am. & Eng. Enc. (2d Ed.) 84. They may refuse to have any sort of dealings with an employer of nonunion labor, singly or collectively; they may persuade and induce their members to join them, and there would seem to be no reason why they should be limited as to the place where they may do such acts. There would be nothing wrongful or unlawful in their going upon the premises of the owner, with his permission, where their associates were engaged at work, for the purpose of notifying or ordering them to desist from work thereon, unless, perhaps, their conduct in that respect be so persistent and annoying to the owner of the premises or contractor as to constitute a nuisance. It is clear, upon authority, that this particular part of the injunctional order goes beyond the limits of the law, and cannot be sustained.

It is therefore ordered that the order appealed from be modified to conform to the views herein expressed, and, as so modified, it is affirmed.