ST. PAUL TYPOTHETÆ and Another v. ST. PAUL BOOKBINDERS'
UNION NO. 37 and Others.[1]

March 10, 1905.

Nos. 14,186—(126).

**Party to Action.**

To be entitled to recognition in the courts of this state, a party must, in the absence of statutory provisions to the contrary, be either a natural or artificial person.

**Unincorporated Association.**

Voluntary unincorporated associations, not engaged in some business enterprise, can neither sue nor be sued in their association name. Actions in which such associations are involved must be brought in the names of the members.

**Statute Construed.**

G. S. 1894, § 5177, construed, and *held* to apply to business associations, and to authorize an action against, but not by, such associations in their common name.

**Plaintiff's Capacity to Sue.**

The St. Paul Typothetæ is an unincorporated association of persons, firms, and corporations engaged in the printing and bookbinding trade. The association is not engaged in such business, nor is it an employer of labor. The sole purpose and object of its organization is the promotion of the interests of its members in the matter of employment of workmen, and entering into, as their representative and in their behalf, contracts with their employees. It is *held* that it has no legal capacity to sue, and cannot maintain an action for a breach of a contract made by it on behalf of its members with their employees.

**Defendant's Capacity to Be Sued.**

The St. Paul Bookbinders' Union No. 37, is an unincorporated association of employees organized for purposes similar to those of the Typothetæ. It is not a business concern; the members are laborers in the printing and bookbinding business, but do not labor for the association, but for themselves, and the sole object and purpose of the association is the promotion of the interests and welfare of its members. It is *held* that it is not, within the meaning of section 5177, G. S. 1894, a business association, and cannot be sued in its association name. The members thereof are liable for a breach of a contract made for them by the association,

[1] Reported in 102 N. W. 725.

if liable at all, on the law of principal and agent, and must be proceeded against individually.

**Point not Decided.**

Whether the complaint states a cause of action against the individual members of the union in favor of the West Publishing Company, is not presented and not decided.

Cross appeals by plaintiffs and defendants from orders of the district court for Ramsey county, Orr, J., sustaining a demurrer to the complaint as to plaintiff West Publishing Company, and overruling a demurrer to the complaint as to plaintiff St. Paul Typothetæ. Order sustaining demurrer as to West Publishing Company affirmed; order overruling demurrer as to St. Paul Typothetæ reversed.

*Stringer & Seymour,* for plaintiffs.

It is conceded by the demurrers that a cause of action is stated against the individual members of the union, for the individual members did not demur for themselves, but upon the ground that a cause of action is not stated against the union. The demurrers are based on the second, fourth and sixth subdivisions of the statute. A demurrer upon the second provision of the statute will not lie unless it affirmatively appears from the complaint that plaintiff has not legal capacity to sue. State v. Torinus, 22 Minn. 272; Minneapolis Harvester Works v. Libby, 24 Minn. 327. Not only does it not affirmatively appear from the complaint that plaintiff has not legal capacity to sue, but it affirmatively appears that plaintiff has such capacity. The Typothetæ is an organization or unincorporated association of individuals, firms and persons, associated for a lawful purpose and for the transaction of business in which each and all of its members are interested. For their mutual interest a contract is made. This contract is violated by the defendants and this action is based on the breach of said contract. We are unable to conjecture on what grounds it can be urged that the Typothetæ has not legal capacity to sue; that is, that it has not authority to make a contract as entered into between it and the defendants. Whether or not the contract is enforceable, whether it is valid or void and whether the complaint states a cause of action or not, does not affect the legal capacity of the Typothetæ to bring this action. If the

Typothetæ is a myth, as counsel suggests, then every copartnership in which the full names of the copartners do not appear is a myth and has no legal capacity to sue.

The second alleged ground of demurrer is that there is a defect of parties plaintiff. But the statute does not make this a ground of demurrer. G. S. 1894, § 5410; Hoard v. Clum, 31 Minn. 186. But counsel now say that, not only is the West Publishing Company a necessary party, but that each member of the Typothetæ in whose establishment the defendants instituted a strike is a necessary party. There are two reasons why this objection is untenable: First, the complaint does not state that any damage occurred to any other member of the Typothetæ than the West Publishing Company. Second, for the reason that all the members of the Typothetæ are parties plaintiff to this action. The reason stated by the court in Gale v. Townsend, 45 Minn. 357, 360, as to defendants under a common name, applies equally to plaintiffs suing under a common name. Dimond v. Minnesota Savings Bank, 70 Minn. 298.

The last ground of the demurrer is that the complaint does not state facts sufficient to constitute a cause of action against Bookbinders' Union No. 37. Under section 5177, G. S. 1894, an association as such, under any name it has assumed, may be sued without bringing in as defendants all the individuals comprising the association. A judgment in such action would affect only the property of the association; but the right to maintain action against an association by service of process upon each and every member of the association was a right at common law which has never been abrogated by statute. The statute is not in derogation of the common law, but is supplemental and additional thereto. There never existed any reason against, there never was any legal objection to, suing an association of individuals unincorporated, if all the individuals were brought within the jurisdiction of the court. But oftentimes justice was thwarted because it was impossible to bring in all of the defendants, and therefore section 5177 was enacted for the purpose of avoidance of this obstacle, and as additional to the common-law right. Gale v. Townsend, supra; Cornfield v. Order Brith Abraham, 64 Minn. 261; Dimond v. Minnesota Savings Bank, supra; Taylor v. Order Railway Conductors, 89 Minn. 222; Jenkinson v. Wysner, 125 Mich. 89.

94 M.—23

The word business is not limited to organizations created for the purpose of money-making.   State v. Young, 29 Minn. 474.   The contract is specific and definite with reference to the field it covers and there is no lack of mutuality concerning the same.   Sturges v. Crowninshield. 4 Wheat. 122; Spear v. Orendorf, 26 Md. 37; Potter v. Holmes, 72 Minn. 153; Staples v. O'Neal, 64 Minn. 27; Goward v. Waters, 98 Mass. 596.   Labor unions have been sued, both in actions in tort and for injunctions.   Barr v. Essex, 53 N. J. Eq. 101, and cases cited.

*Daggett & Todd,* for defendants.

Neither the St. Paul Typothetæ, nor the Bookbinders' Union No. 37, is an association for the transaction of business such as is contemplated by G. S. 1894, § 5177; Burnetta v. Marceline, 180 Mo. 241.   The common-law rule is that a labor organization as such could not make a contract, neither could it sue or be sued, and unless our statute is broad enough to comprise and encompass an organization of this kind, the common law would still apply.   These organizations, in contemplation of the law, are mythical beings.   They are not in esse, have no legal existence, and not being associations for the transaction of any common business cannot sue or be sued.   It is likewise patent, that if they cannot sue or be sued, neither can they make a contract.  ·

The contract lacks mutuality and is void.   Bailey v. Austrian, 19 Minn. 465 (535); Tarbox v. Gotzian, 20 Minn. 122 (139); Stensgaard v. Smith, 43 Minn. 11; St. Louis v. Matthews, 64 Ark. 398; Moon v. Mayor, 89 Law Times R. 595.   The contract is void, as being in the nature of a contract of employment, made by the St. Paul Bookbinders' Union No. 37, for and on behalf of its members, and such an association cannot make a contract binding upon its members for their employment.   Burnetta v. Marceline, supra; Jefferson v. Asch (53 Minn. 446) 25 L. R. A. 257, note; Ferris v. Carson, 16 Nev. 44.

BROWN, J.

This action was brought by the St. Paul Typothetæ, an unincorporated association of persons, firms, and corporations engaged in the business of printing and bookbinding, and the West Publishing Company, a corporation and member of the association, against the St. Paul Bookbinders' Union No. 37, an unincorporated association of printers and

bookbinders, and the members thereof, to recover damages for an alleged breach of contract. Separate demurrers were interposed to the complaint, one by the Bookbinders' Union, and one by the individual members thereof, the grounds of which are (1) that plaintiff St. Paul Typothetæ has no legal capacity to sue, and (2) that the complaint does not state facts sufficient to constitute a cause of action against the union in favor either of the Typothetæ or the West Publishing Company. The demurrer as to the West Publishing Company was sustained, but overruled as to the Typothetæ. Both parties appealed.

The complaint alleges that the persons, firms, and corporations named therein, twenty five in number, are associated together and doing business in St. Paul under the name and title of "St. Paul Typothetæ"; that each of the said persons, firms, and corporations were at all times named therein engaged in publishing and bookbinding, and employers of such printers as were necessary to carry on and conduct their several enterprises; that the object in the formation of the Typothetæ was the protection and promotion of the interests of its several members, correcting abuses, promoting concerted action, reconciling differences, and adjusting controversies between employer and employee, and particularly in securing definite, stable, and harmonious relations between the various members of the association and their respective employees. It further alleges that defendant St. Paul Bookbinders' Union No. 37, is an unincorporated association composed of the persons named therein, the object and purpose of which is the advancement and protection of the mutual and individual interests of all its members in the matter of employment, labor, and wages, and especially the regulation of the relations between employer and employee in the bookbinding trade. It further alleges that on November 21, 1903, plaintiff St. Paul Typothetæ and defendant Bookbinders' Union, for a valuable consideration, by and through their officers entered into a certain contract, a copy of which is attached to and made a part of the complaint.

It is unnecessary here to set out the contract in full. It provides generally the terms of employment between the firms and corporations forming the Typothetæ, and the members of the union; classifying employees, and fixing their compensation in accordance with the nature of the work of each, and specifying generally the terms and conditions

of employment. It specially provides that during the life of the contract no strike or lockout shall occur, and that any differences which may arise as to the construction of the contract shall be settled by arbitration, providing the parties do not reach an amicable agreement. The complaint alleges a breach of this contract on the part of the union and its members; that the members of the union in the employ of the West Publishing Company, a party plaintiff and member of the Typothetæ, went out on a strike without cause or provocation, and without a submission of their grievance to arbitration, to the great damage of that company. The complaint further alleges that at the time the contract was entered into it was well known, understood, and agreed by all the parties that said association, St. Paul Typothetæ, was not an employer of labor, and did not intend to employ any labor or workmen whatsoever, and that each and all the provisions, covenants, conditions, and agreements in said contract to be performed and kept by the union and its members were made for the benefit of each and all the members of the Typothetæ who were then employing, or should thereafter during the life of the contract employ, workmen.

The only questions necessary to be considered on this appeal are (1) whether the Typothetæ has legal capacity to sue, and (2) whether the complaint states a cause of action against the Bookbinders' Union. Whether the complaint states a cause of action in favor of the West Publishing Company against the individual members of the union is not presented by the demurrer. And whether it states a cause of action in favor of that company against the union, as an organization, is determined by the further question whether the union may be sued in its association name.

The Typothetæ and Bookbinders' Union, so far as their legal status is concerned, occupy the same position. Both are unincorporated voluntary associations, and the principles of law applicable generally to unincorporated clubs and societies apply to each. The position such organizations occupy under the law is a question upon which the courts are not fully agreed. It is generally acknowledged that they are sui generis, but the courts have had difficulty in agreeing upon the legal principles to apply to them. Many cases hold that in some of their relations they are to be regarded as copartnerships, and governed by the general laws applicable to that relation, and that in other respects

the law of corporations applies to their affairs. The distinction in this respect is made (1) as to cases involving rights between the association and third parties dealing with it, and (2) as to cases involving controversies between the members respecting the property owned by the association. Niblack, Ben. Soc., 221. Such organizations are properly divided into two classes, viz., those organized for the purpose of conducting some business enterprise, and those whose purpose is solely the promotion of the interests and welfare of their members, unaccompanied by any business functions. As to this class, it would seem that the law of principal and agent should apply. Ehrmanntraut v. Robinson, 52 Minn. 333, 54 N. W. 188.

Both the Typothetæ and the Union come within this class. The Typothetæ is not a business association within the proper meaning of the term; it is not engaged in employing labor, or entering into trade contracts on its own behalf. Its exclusive occupation, as disclosed by the complaint, is that of promoting and protecting the persons, firms, and corporations composing it in controversies with their employees, and, as their representative or agent, entering into on their behalf contracts with such employees. So far as the complaint discloses, it has no capital stock and no property. The union is an association of employees or workmen organized for similar purposes; it has no capital stock or property; its members do not work under its authority or in its behalf, but for themselves.

But whatever may be the law applicable to such associations generally, there is one respect in which the authorities are agreed, and that is that at common law they are not, whether organized for business or other purposes, entitled to recognition in the courts in their association name. It is well settled that, in the absence of a statute otherwise providing, to be entitled to conduct judicial proceedings in court, a party litigant must be either a natural or artificial person. The rule is correctly stated in 22 Enc. Pl. & Pr. 230, where, in speaking of unincorporated societies, such as those here involved, it is said that such societies cannot maintain an action in their association name, but must sue in the name of the individuals composing them, however numerous they may be. Such societies, in the absence of statutes recognizing them, have no legal entity distinct from that of their members. The rule is followed by an unbroken line of authorities, though a different rule has been ap-

plied in many of the courts in actions purely of an equitable nature. On the question generally, see Niblack, Ben. Soc. 183; Richardson v. Smith, 21 Fla. 336; Mexican v. Yellow Jack, 4 Nev. 40; Detroit v. Detroit, 44 Mich. 313, 6 N. W. 675; Danbury v. Bean, 54 N. H. 524; Mayer v. Journeymen, 47 N. J. Eq. 519, 20 Atl. 492; Nightingale v. Barney, 4 G. Greene (Iowa) 106; Barbour v. Albany Lodge, 73 Ga. 474; Steamboat Pembinaw v. Wilson, 11 Iowa, 479.

The rule has been changed and modified in many of the states by statutory enactments permitting such associations to sue and be sued in their adopted name. It is claimed in the case at bar that section 5177, G. S. 1894, has changed and modified it in this state. Such is not our understanding of the statute. It provides that when two or more persons associate in any business, transacting that business under a common name, whether it includes the names of such persons or not, the association may be sued by its common name. The statute has been considered in several cases, but in no case to which our attention has been called has it been held that such an association may bring suit in the name in which it carries on its business. The statute does not provide that actions may be brought in the name of the association, but only that actions may be brought against it. It was construed in Dimond v. Minnesota Savings Bank, 70 Minn. 298, 300, 73 N. W. 182, where it was said that it was enacted in the interests of creditors, to enable them to sue copartners or associations by the name under which they transact business, and thus avoid the difficulty of obtaining the names of all the persons forming the associations. "The statute was intended to enlarge, not to restrict, the common law in regard to suits against copartners. It does not permit partners or associates to bring an action in their common name, for they have the means of knowing who the associates are."

This interpretation of the statute is in strict accordance with its evident purpose. The common-law rule that the parties to an action must be either natural or artificial persons has been modified in this state, therefore, only as respects actions against unincorporated associations. An examination of the authorities discloses that in many of the states authority is expressly granted in such cases to sue and be sued, but such is not the statute in this state. The Typothetæ comes within the rule, and it is clear that it has no legal capacity to sue.

The rule applies equally to defendant Bookbinders' Union. That is an unincorporated association similar to the Typothetæ, and cannot be sued in its common name. Many of the cases above cited were actions against such associations, in which the rule of the common law was applied. See also 22 Enc. Pl. & Pr. 242, where it is said that an unincorporated society or association, being considered at common law a copartnership, cannot, in the absence of statute, be sued in its society or association name; but all the members must be made parties, since such associations have, in the absence of statutory recognition, no legal entity apart from their members. This rule applies to the union, unless it comes within the scope of the statute providing for actions against persons doing business under a common name. The statute, it is clear, was not intended to include associations of this character. Its purpose was to authorize the courts to take jurisdiction over unincorporated associations engaged under a common name in some sort of business in which property is bought and sold, debts contracted—concerns owning and holding property, and incurring pecuniary liability—and not associations of the character of labor unions, having no property, engaged in no business occupation, in a proper sense of the term, and whose only function is the promotion of the interests and welfare of the persons who are members thereof. Such an association is not a copartnership, and the members thereof are liable, if at all, on the contracts of the association on the law of principal and agent. Ehrmanntraut v. Robinson, 52 Minn. 335, 54 N. W. 188. It is not a copartnership, because the association is engaged in no business enterprise.

In Burnetta v. Marceline, 180 Mo. 241, 79 S. W. 139, a case involving a contract made by a labor union, the court said: "The Miners' Union is not an organization for the purpose of conducting any business enterprise, but is purely one for the protection of labor against the unjust exactions of capital. The members of the union do not labor in coal mines for the organization, but each member works for himself; and whatever compensation he receives is for the benefit of himself and his family. That the Miners' Union, as an organization, cannot make a contract for its individual members in respect to the performance of work and the payment for it, in our opinion, is too clear for discussion." This citation is not directly in point, except in so far as it supports the proposition that the Bookbinders' Union is not a business association

within the meaning and purpose of our statute. The same principle was laid down in Brown v. Stoerkel, 74 Mich. 269, 41 N. W. 921, a case involving an unincorporated association known as the "Knights of Labor."

Unless we are to depart from the interpretation given our statute in the Dimond case, supra, or enlarge it by judicial construction, it must be held that the union cannot be sued in its association name. This we do not feel justified in doing. If it is deemed wise that such associations be vested with authority to sue and be sued in their common name, the legislature, now in session, can readily so provide.

The defendant union is wholly unlike the associations involved in Cornfield v. Order Brith Abraham, 64 Minn. 261, 66 N. W. 970, Steinert v. United Brotherhood, 91 Minn. 189, 97 N. W. 668, and Taylor v. Order Railway Conductors, 89 Minn. 222, 94 N. W. 684. The associations there before the court were engaged in the business of insuring their members, a distinct and well-established line of business. Nor is the case similar to Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663. That was an action in equity to restrain the trades council and its members from certain threatened wrongful and unlawful acts. In cases of that character the courts will proceed against the association and its officers and members, but not against the association alone in its common name.

We have been cited to no case where the court has entertained an action of this kind against an association in its common name, where the point has been raised, and our research has disclosed but one, the Taff Vale case, which arose in England in 1901. Taff Vale v. Amalgamated, L. R. App. Cas. 1901, 426. It was there held that an association of employees, similar to that of the Bookbinders' Union, might be sued in its common name. But the decision was placed squarely upon the ground that such associations are expressly recognized and their organization provided for by act of parliament, and, though the act authorizing their organization did not expressly provide that they might sue or be sued, the court held that the right arose by necessary implication from the fact of legislative recognition and the provision of the law empowering the association to own and hold property. Many cases have been found where injunctions have been issued restraining

labor unions, their officers and members, from threatened violations of the law, but cases of that nature are not in point.

It follows that the Typothetæ has no legal capacity to sue, and cannot maintain the action; that the Bookbinders' Union cannot be sued in its association name, and neither the Typothetæ nor the West Publishing Company can maintain the action against it. Whether, within the rule announced by this court in Ehrmanntraut v. Robinson, supra, on the law of principal and agent, a cause of action is stated in favor of the West Publishing Company against the individual members of the union, is not presented, and we do not determine it. The demurrer interposed by the individual members of the union does not raise the question, and we leave it for future consideration, should it ever arise.

The order of the court below overruling the demurrer as to the Typothetæ is reversed; that sustaining the demurrer as to the West Publishing Company against the union, as such, is affirmed.