# EARLE H. RORABACK v. MOTION PICTURE MACHINE OPERATORS UNION OF MINNEAPOLIS AND OTHERS.[1]

August 2, 1918.

No. 20,685.

**Injury to another's business.**

1. Men, either singly or in combination, may use any lawful means to accomplish a lawful purpose, although the means adopted may cause injury to another; but they may not intentionally injure or destroy the business of another to accomplish an unlawful purpose.

**Same — violation of Constitution.**

2. The Constitution guarantees to everyone the right to work in his own business, and any attempt to deprive him of that right is unlawful.

[1]Reported in 168 N. W. 766.

**Injunction against "bannering."**

    3. "Bannering" plaintiff's place of business as unfair to organized labor and thereby deterring the public from patronizing him, if done for the purpose of compelling him not to work as an operative himself in his own business, is unlawful and may be enjoined.

**Denial of injunction.**

    4. As the facts are not free from doubt, the trial court did not abuse its discretion in refusing to issue a temporary injunction.

Action in the district court for Hennepin county against Motion Picture Machine Operators Union of Minneapolis, Local 219, International Alliance of Theatrical State Employees of the United States and Canada, an unincorporated association, the officers and members thereof, also Trades and Labor Assembly of Minneapolis and Hennepin county, an unincorporated association composed of delegates from the various unions of the building trades and other labor union societies, and the officers and delegates to such assembly, to recover $1,200 damages and to enjoin defendants and their respective agents from combining to restrain or obstruct the trade and patronage of plaintiff's theatre, from stationing pickets in the neighborhood of the theatre with or bearing a placard or transparency having on it "This Theatre Unfair to Organized Labor," or words of similar import, and from doing other acts the natural result of which would tend to injure the patronage of plaintiff's business. From an order, Dickinson, J., denying his motion for a temporary injunction, plaintiff appealed. Affirmed.

    *Nathan A. Chase,* for appellant.

    *Fifield & Finney,* for respondents.

TAYLOR, C.

The defendants are the Motion Picture Machine Operators Union of Minneapolis, known as Local 219, and composed of motion picture machine operators; the Trades and Labor Assembly of Minneapolis composed of representatives from a large number of labor unions of Minneapolis of which Local 219 is one; and a large number of individuals who are officers or members of one or the other, or both, of these associations.

Plaintiff has operated a motion picture theatre, known first as the Orient and later as the New National Theatre, in the city of Minneapolis from May 1, 1916, until the present time. He employed members of Local 219 to operate his machines until September 10, 1916. Since that date he claims to have operated the machines himself unassisted. Several conferences took place between plaintiff and representatives of the defendants concerning the re-employment of union operators but no agreement was reached. In December, 1916, the Trades and Labor Assembly declared plaintiff's theatre "Unfair to organized labor;" and thereupon, and repeatedly thereafter, defendants published in the Labor Review, their official paper, that the New National Theatre was "Unfair to organized labor." In February, 1917, defendants caused a banner bearing the words "Unfair to organized labor" to be carried back and forth in the street in front of the theatre, and at the time of the hearing were still "bannering" the theatre in that manner. In May, 1917, plaintiff brought this action for an injunction, and, upon the complaint supported by affidavits, applied for a temporary injunction pendente lite. Defendants answered, and, upon the answer supported by affidavits, opposed the issuance of the temporary injunction. The court declined to issue it and plaintiff appealed.

Defendants admit the acts above mentioned and also an intention to continue them, and insist that they have the legal right to do so. Plaintiff alleges that prior to the commission of such acts he had built up and enjoyed a large and lucrative business. He also alleges that these acts deter the public from patronizing his theatre to such an extent that his business has been greatly injured and will be ruined if they are continued, and that he has no adequate remedy at law.

The undisputed facts, some of which are mentioned above, show plainly that the purpose of defendants is to injure and perhaps destroy plaintiff's business unless he accedes to their demands, and that the course adopted is having the effect intended, and that plaintiff has no adequate remedy at law.

No person or combination of persons has the right maliciously to injure or destroy the business of another by acts which serve no legitimate purpose of his own. Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L.R.A.(N.S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807; Hitchman

Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. ed.— Ann. Cas. 1918B, 461. As said in Ertz v. Produce Exchange of Minneapolis, 79 Minn. 140, 81 N. W. 737, 48 L.R.A. 90, 79 Am. St. 433: "One man singly, or any number of men jointly, having no legitimate interests to protect, may not lawfully ruin the business of another by maliciously inducing his patrons and third parties not to deal with him." Defendants may use any lawful means to accomplish a lawful purpose, although the means adopted may incidentally cause injury to plaintiff, but they may not intentionally injure or destroy plaintiff's business to accomplish an unlawful purpose. Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 1118, 63 L.R.A. 753, 103 Am. St. 477, 1 Ann. Cas. 172; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. ed. —, Ann. Cas. 1918B, 461; Erdman v. Mitchell, 207 Pa. St. 79, 56 Atl. 327, 63 L. R. A. 534, 99 Am. St. 783; Connors v. Connolly, 86 Conn. 641, 86 Atl. 600, 45 L.R.A.(N.S.) 564; March v. Bricklayers & P. Union, 79 Conn. 7, 63 Atl. 291, 4 L.R.A.(N.S.) 1198, 118 Am. St. 127, 6 Ann. Cas. 848; Brennan v. United Hatters, 73 N. J. Law, 729, 9 L.R.A. 254, 118 Am. St. 727, 9 Ann. Cas. 698; Hopkins v. Oxley Stave Co. 28 C. C. A. 99, 83 Fed. 912; Klingel's Pharmacy v. Sharp & Dohme, 104 Md. 218, 64 Atl. 1029, 7 L.R.A. (N.S.) 976, 118 Am. St. 399, 9 Ann. Cas. 1184.

Defendants cite and rely upon the case of Steffes v. Motion Picture M. Oper. U. of Minneapolis, 136 Minn. 200, 161 N. W. 524, as authorizing them to do the things complained of, and the showing which they make indicates that they intended to, and probably did, confine their acts to those which were recognized in that case as permissible for the purpose and under the circumstances there disclosed. In that case the purpose sought to be accomplished was found to be a lawful one, and to bring the present case within the doctrine of that case, the purpose sought to be accomplished in the present case must also be a lawful purpose.

Plaintiff is not a member of the operators' union and cannot become a member because the constitution of the union provides that no owner, or part owner, or manager, of a place of amusement shall be admitted to membership. It also provides that any member who shall become owner, part owner, or manager of a place of amusement must either

withdraw or be expelled. Plaintiff opens his theatre at about 10 o'clock in the forenoon and closes it at about 11 o'clock at night. He insists upon working as an operator of his motion picture machines for one-half the time each day in order to save expense. Defendants insist that only members of the union shall work as operators of the machines, and, as plaintiff is not a member of the union and cannot become a member of it, that he shall not work as an operator although qualified to do so. Plaintiff asserts that the only controversy between himself and the defendants is as to whether he shall be permitted to perform the work of an operator himself in his own theatre, and that the action taken by defendants is solely for the purpose of compelling him to cease working as such operator. He claims that he is not and never has been unfair to union labor; that he has always employed union labor and none other; that he employed union operators until he began work as an operator himself; that before beginning work himself he endeavored to make an arrangement to work half the time each day himself and to employ union operators upon union terms for the remainder of the time, but that the members of the union refused to work in the theatre if he worked as an operator himself; that at the several conferences with defendants and their representatives he made the same proposition and has been ready to carry it out at all times; that he ceased to employ union operators solely for the reason that they refused to work in the capacity of fellow workmen with him, and that ever since he has operated his machines himself without any assistance whatever.

In the Steffes case, Steffes employed a nonunion operator, and the purpose of the union was to secure the employment of a union operator. No question as to whether the owner should be permitted to work himself was involved. In the present case, according to the claim of plaintiff, the sole question involved is whether the owner shall be permitted to work himself in his own business.

If men, either singly or in combination, may lawfully injure or destroy the business of another for the purpose of compelling him not to work in such business himself, it will have far-reaching consequences. Such a doctrine would limit the field of business to those who have sufficient capital to carry on a business without becoming operatives therein themselves, and would debar those who have little or no capital, ex-

cept their personal skill and ability, from seeking to better their condition by engaging in business on their own account. Such a doctrine means that a machinist who starts a machine shop may lawfully be prevented from working therein as a machinist; that a carpenter who starts a carpenter shop may be required to have all his work done by others; that a barber who opens a barber shop must cease to work as a barber. It means that the man in any occupation, who starts in business for himself relying upon his personal skill and ability to attain success, must forego the right to profit by his own skill at the arbitrary behest of another, or see his business ruined. Such is not the law. The right of every person to work in his own business is a fundamental right guaranteed to him by the bill of rights in the Constitution and by the Fourtenth amendment to the Federal Constitution, and any attempt to deprive him of that right is necessarily unlawful. Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. ed. 131, L.R.A. 1916D, 545, Ann. Cas. 1917B, 283. However far members of an organization may go in an attempt to force an employer to employ members of the organization, an attempt to force him to desist from working himself in his own business is clearly an invasion of the rights secured to him by the Constitution. Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 5 L.R.A.(N.S.) 899, 108 Am. St. 499, 3 Ann. Cas. 738; Willner v. Silverman, 109 Md. 341, 71 Atl. 962, 24 L.R.A.(N.S.) 895; Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 1118; Brennan v. United Hatters, 73 N. J. Law, 729, 9 L.R.A.(N.S.) 254, 118 Am. St. 727, 9 Ann. Cas. 698; Hundley v. Louisville & N. R. Co. 105 Ky. 162, 48 S. W. 429, 63 L.R.A. 289, 88 Am. St. 298; Erdman v. Mitchell, 207 Pa. St. 79, 56 Atl. 327, 63 L.R.A. 534, 99 Am. St. 783; DeMinico v. Craig, 207 Mass. 593, 94 N. E. 317, 42 L.R.A.(N.S.) 1048; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. ed. —, Ann. Cas. 1918B, 461.

If the facts bear out plaintiff's claim that the purpose of defendants is to compel him to cease working as an operator in his own business, it will follow that they are seeking to accomplish an unlawful purpose, and that the acts by which they are attempting to prevent the public from patronizing him will fall within the class of acts which the law deems malicious, and which it is the duty of the courts to restrain. Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, supra. Acts

which may not be unlawful if committed for the purpose of inducing an employer to discharge one workman, or set of workmen, in order to give employment to another workman, or set of workmen, may be enjoined if committed for the purpose of depriving the employer of the right to use his own skill and ability in the furtherance of his own business, for his right to work in his own business is superior to the right of any other in respect to such business.

Granting or refusing an injunction pendente lite rests so largely in the discretion of the trial court, however, that an appellate court is not justified in interfering, unless the conclusion reached is clearly erroneous and will result in an injury which it is the duty of the court to prevent. While the question as to whether plaintiff shall work as an operator is doubtless the principal controversy between the parties, defendants deny that that is the only controversy. They assert that plaintiff discharged his union operators without cause, and refused to re-employ union operators unless they would work with nonunion operators. Also that he employed nonunion men to make improvements and repairs in the theatre, and has had nonunion operators, other than himself, operating his machines. Defendants could not well complain of the employment of nonunion operators, if union operators refused to work for the sole reason that plaintiff worked himself, but we understand defendants to claim that plaintiff required union men to work with nonunion men other than himself. The refusal of the trial court to issue the injunction requires us to take the view of the facts most favorable to the defendants, and we cannot say that plaintiff's contention is conclusively established. The case is presented upon the pleadings and upon affidavits pro and con; it has not yet been tried. If when the case is tried and findings are made determining the facts, it shall appear that plaintiff's contention is correct, he is entitled to relief, but we cannot say that the trial court abused its discretion in refusing to issue an injunction before the facts are ascertained, and the order appealed from is affirmed.

HALLAM, J. (concurring).

I concur in the result.

I do not understand that the right of a man to work in his own business is questioned nor do I understand that there is any claim of right of defendants to "destroy plaintiff's business" on any ground.

I understand that defendants have the right to refuse to work as fellow workmen with nonunion men or with an employer, and that they have a right, in a proper and orderly manner to advise one another or the public that a certain employer does not employ union operatives or that he insists on operating his own machines. It seems to me the main question in the case is whether the conduct of defendants has amounted to more than that. If not, their acts have not been unlawful.

On December 7, 1918, the following opinion was filed:

PER CURIAM.

Plaintiff applied for a rehearing claiming that the admitted facts show a violation of section 8973 of the general statutes of 1913. The matter was submitted to the trial court upon the pleadings and upon affidavits pro and con, and that court refused to issue a temporary injunction. Defendants relied upon the Steffes case and apparently assumed that they had brought themselves within the rule applied in that case. The right to and necessity for a temporary injunction is not so conclusively established that we feel required to order that one issue notwithstanding the refusal of the trial court to issue it. To direct its issuance under the circumstances would be, in effect, to determine the case upon affidavits, and the rights of the parties can be more satisfactorily determined after the parties adduce their evidence at the hearing upon the merits.

Rehearing denied. ————————————