BRICKLAYERS', MASONS' & PLASTERERS' INTER-
NATIONAL UNION OF AMERICA et al. *v.*
SEYMOUR RUFF & SONS, INC.
[No. 12, January Term, 1931.]

*Decided March 19th, 1931.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William L. Marbury* and *William L. Rawls,* with whom were *L. Harold Sothoron, Winebrenner & Sinn,* and *Marbury, Gosnell & Williams,* on the brief, for the appellants.

*Myer Rosenbush* and *Parsons Newman,* with whom were *Edward J. Smith, James E. Boylan, Jr.,* and *Rosenbush & Bernstein,* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The principal question for decision in this case is whether an employer, who has entered into a subcontract to perform work on a certain building, may recover damages against the labor unions of which, with his knowledge, his employees are members, because those unions have ordered them to quit work on the building in question for the reason that the general contractor has refused to employ union labor on other

jobs in the same locality; there being no contract of employment between the subcontractor and his employees. This question arises in an action on the case brought in the Circuit Court for Frederick County by the appellee against the Bricklayers', Masons' & Plasterers' International Union of America, a voluntary unincorporated association, hereinafter called the International, the Bricklayers' & Masons' Protective & Beneficial Union No. 7 of Maryland, located at Frederick, Md., a voluntary unincorporated association, hereinafter called Union No. 7, and John T. White.

The declaration alleges that the defendant International is a voluntary unincorporated association consisting of more than seven members, has a recognized group name, and is located in the City of Washington, D. C., but doing business in various states throughout the United States, through its duly authorized agents, and, for the purposes thereinafter mentioned, having appointed the defendant White as its duly authorized agent; that the International is composed of elective and appointive officers and the legally elected representatives of subordinate unions, created and acting under its constitution, and these subordinate unions are located in the various cities throughout various states of the United States, and that the government and superintendence of such subordinate unions is vested in the International, as the supreme head of all unions; that the International has the power to determine the customs and usages in regard to all matters relating to the craft, including the power to legalize and govern strikes and lockouts, and included in such power to order strikes and lockouts is the power to punish local unions and any member or members thereof by severe fines and other penalties, and by expulsion from the union, in the event of their failure to obey an order of the International or its officers to go on strike and refuse to work; that the defendant Union No. 7 is a voluntary unincorporated association consisting of more than seven persons, having a recognized group name, and having its principal office and place of business in the City of Frederick, Md., is a member and one of the subordinate unions of the International, and membership

of both of said organizations being composed of "union men"; that the persons forming the plaintiff corporation are contracting stone masons and have been engaged in that business in the City of Baltimore, Md., for many years past, first, as a partnership, and since 1928 as a corporation, and during the entire time in which they have been so engaged they have conducted what is known as a union shop, employing union men only, to wit, men affiliated with the International and its subordinate unions in various cities and states, and doing work with such men in various cities and states of the United States, and, at the time of the wrongs and injuries thereinafter complained of, there was no grievance, trouble, or controversy of any kind between the plaintiff and its employees, the said "union men," nor between the plaintiff and the defendants; that on or about January 8th, 1929, the plaintiff entered into a written contract with Lloyd C. Culler of Frederick, Md., a general contractor having a contract for the erection and completion of a church in Frederick, to do all of the stone masonry, brick, and tile work, furnish labor and material, and set the limestone, for the erection and completion of the church, for the sum of $50,000, and, pursuant to its obligation thereunder, the plaintiff began the work required of it to be done under the contract, and employed union labor only in and about the work, and continued said work until the early part of March, 1929, when the defendants wantonly, unlawfully, and maliciously, and with intent to cause a breach of said contract between Culler and the plaintiff, declared a strike upon said job, and ordered all of said union men employed upon the work by the plaintiff to go on a strike and quit work, and, pursuant to this order, the men did go on strike and quit work, and refused to resume work until ordered to do so by the defendants, and subsequently, upon orders of the defendants, but only after an interval of time, the men resumed work and continued for a few days, when the defendants again wantonly, unlawfully, and maliciously, and with intent to cause a breach of the contract between Culler and the plaintiff, ordered a strike on said job and ordered the men to quit work, and said men did

go on strike and quit work and refused to resume work until ordered to do so by the defendants; that the defendants maliciously, wantonly, and unlawfully, notwithstanding the requests and demands of the plaintiff, refused to declare the strike off and order the men back to work, and by reason thereof the plaintiff was unable to continue the work it was required to do in and about the church under its contract with Culler, and on account thereof Culler canceled the contract and notified the plaintiff that he was employing others to finish the work at the risk and expense of the plaintiff; that the acts and conduct of the defendants were not caused or influenced by any violation on the part of the plaintiff of any obligation it owed the defendants or either of them, or to the union men employed by it, but said wanton, malicious, and unlawful acts of the defendants were caused solely and entirely by the desire of the defendants to compel Culler to employ union men on work Culler had contracted to do in Frederick and vicinity, other than the work upon said church, and because Culler refused to comply with the demand of the defendants that he employ union men on all of his other work, the defendants wantonly, maliciously and unlawfully did the acts complained of, thereby causing a breach of the contract between Culler and the plaintiff, and all of the acts were done by the defendants with full knowledge that said acts would result in said breach of contract and cause substantial loss and great injury and damage to the plaintiff, for which the plaintiff claimed the sum of $25,000 damages.

Before discussing the principal question as above set forth, we will dispose of the incidental and subsidiary questions arising out of the pleadings.

The record discloses that upon filing the declaration a separate writ of summons was issued for each of the defendants; that, accompanying these writs of summons, duly certified copies of the summons and of the declaration and notice to plead were sent to the sheriffs of Frederick County and Baltimore City; that on the return day of the writ the sheriff of Frederick County made return of the writ thereon indorsed, "Summoned the Bricklayers and Masons Protec-

tive and Beneficial Union No. 7 of Maryland, located at Frederick, Md., a voluntary unincorporated association, by service upon Leonard C. Kreh, its financial secretary, and copy of summons and copy of narr left with him. Wm. C. Roderick, Sheriff"; and on the same day the writ of summons to the sheriff of Baltimore City was returned indorsed, "Summoned the Bricklayers, Masons and Plasterers International Union of America, a voluntary unincorporated association, by service on John T. White, agent, and a copy of narr and notice to plead left with said agent, also summoned John T. White and copy of narr and notice to plead left with the defendant. John E. Potee, Sheriff"; that the defendants failed to appear, and on July 2nd, 1929, the personal appearance of the defendants was entered and rule laid upon them to answer the declaration or judgment would be entered against them by default; that on July 20th counsel entered their appearance for the defendants Union No. 7 and John T. White, and the same day filed a demurrer on behalf of each of these defendants; on the same day there was filed a paper by the International, signed by it by Harry C. Bates, first vice-president, verified by affidavit of Bates, which paper the docket entries state to be a plea to the jurisdiction. This paper is headed "Plea to the Jurisdiction," in which the International, by Harry C. Bates, its first vice-president, says: "That at the time this suit was brought it had not, nor has it now, an office in said State, that it did not then, nor does it now, regularly meet or transact business in said State; but that its principal office is located in the City of Washington, in the District of Columbia, and, that it regularly meets and transacts its business there, and at the time of the issuance of the summons in this case, it had its principal office and regularly met and transacted its business in the said City of Washington." On the 24th of July the plaintiff filed a replication to the plea to the jurisdiction, traversing the allegations therein made. On August 2nd, the attorneys who had entered their appearance and filed demurrers for the defendants Union No. 7 and White appeared specially for the defendant International and demurred to the plaintiff's rep-

lication. On November 2nd, the demurrer to the replication was heard by the court, as well as the demurrers to the narr, filed by the other defendants; whereupon the court overruled the demurrers of Union No. 7 and White to the narr, and sustained the demurrer of the International to the replication. Subsequently the defendants Union No. 7 and White filed general issue pleas, and the plaintiff filed an amended replication to the International's plea to the jurisdiction. On January 13th, 1930, issue was joined on the amended replication, and testimony heard by the court on that issue; whereupon verdict was rendered in favor of the plaintiff, and judgment entered on the verdict that the defendant International answer over. On January 24th the International, by the same attorneys, filed a motion to quash the writ of summons directed to the International, in which motion it was alleged that the said attorneys appeared specially and moved that the return to the writ of summons theretofore issued against it be quashed, because White, upon whom the writ was served, was not at the time of the issuance of the writ, nor since then, nor prior thereto, nor at that time, an agent or officer of the International, upon whom process could have been served legally for and on behalf of the defendant. The plaintiff interposed a motion *ne recipiatur* to this motion to quash, which motion *ne recipiatur* was granted; whereupon the International filed the general issue plea. At this stage of the proceedings, upon suggestion and affidavit, the case was removed from Frederick County to Carroll County for trial. The docket entries after the case reached Carroll County show that, on June 5th, 1930, issue was joined short and case submitted for trial before the court; demurrers of all defendants to *narr* overruled: "motion and leave to amend *narr* by interlineation by changing figure 1 and the word fifteen to twenty-five and amendment made changing figure 1 and word fifteen to twenty-five and all pleas and replications refiled." The trial was then proceeded with, and resulted in a verdict and judgment for the plaintiff. It is from that judgment the appeal here is taken.

The docket entries of the Carroll County court indicate that the demurrers to the declaration were overruled in that court; subsequent to which action came motion and leave to amend the declaration in the manner above indicated; and then "all pleas and replications refiled." The record does not disclose any necessity for the court in Carroll County to pass upon the demurrers, they having been overruled by the court in Frederick County before removal of the case; and it would seem that the action of the Carroll County court on the demurrers was had before the amendment to the declaration, which in certain cases would create the necessity of refiling the demurrers and obtaining a new ruling thereon after the amendment. In this case, however, it is apparent that the change effected by the amendment is not such as would necessitate the refiling of the demurrers, because it in no sense altered the cause of action or the parties thereto. *Middendorf Co. v. Milburn Co.*, 137 Md. 583, 113 A. 348. We think it is clear that the only demurrers which were filed, namely, by the defendants Union No. 7 and White, were in fact overruled in such manner as require this court to pass upon the questions thereby raised as to the sufficiency of the declaration. There was, in fact, no demurrer to the declaration interposed by the International; its only demurrer being to the first replication to its plea to the jurisdiction. This demurrer was in a collateral proceeding independent of the main question raised by the declaration, which matter of jurisdiction should have been and was determined as a preliminary question. This particular matter is of little consequence in the present case, for the reason that the demurrers to the declaration were interposed by two of the defendants, both or either of which challenged the sufficiency of the declaration, and, if sustained, would of necessity inure to the benefit of the International.

After the second replication of the plaintiff to the International's plea to the jurisdiction, the International filed the motion to quash the summons on the ground that White, upon whom the writ of summons was served, was not at that time, before, or since, the agent of the International. This

motion was not verified by affidavit, and was met by a motion by the plaintiff that it be not received. It is firmly established in this state that dilatory pleas must be accompanied by an affidavit as to the truth of the facts therein alleged. The basis of this rule and practice is the Statute of 4 Anne, chap. 16, sec. 11 (enacted in 1705), which provides: "That from and after the first day of Trinity Term no dilatory plea shall be received in any court of record unless the party offering such plea do by affidavit prove the truth thereof or show some probable matter to the court to induce them to believe that the fact of such dilatory plea is true." A motion to quash the summons, like all dilatory pleas, does not go to the merits of the controversy, but its purpose is to show that, although the plaintiff may have a just cause of action, the defendant has not been properly brought into court so as to require him to answer on the merits. We think, therefore, that such a motion is within the rule established in respect to dilatory pleas. This motion asserts a fact, to be determined by evidence. When a fact alleged in a motion to quash summons can only be determined by evidence, the rule requires that the party filing the motion, as an evidence of good faith and that it is not filed frivolously or for the sole purpose of delay, be required to verify it by affidavit, thereby indicating his belief that, if given an opportunity, he can substantiate the fact alleged by competent proof. The purpose of the Statute of Anne was to require the party making the motion to take such action as would induce the court to believe the fact set out in such dilatory plea. It may be that the illegality of the summons would be apparent upon the face of the return to the writ; and it would seem logically to follow that, if such were the case, the function of the affidavit would be thus supplied, and it would not be necessary to accompany the motion by an affidavit. In this case the reason alleged in the motion for quashing the writ was *dehors* the record, and depended on extrinsic proof. Under such conditions, the allegations contained in the motion should have been supported by affidavit. There was no affidavit; neither was there record or other evidence to induce the court

to believe the facts therein set forth. The motion *ne recipiatur* was properly granted.

The question raised by the plea to the jurisdiction cannot be considered by this court. It was a formal, technical plea to the jurisdiction filed by the International in proper person, and raised the question of whether or not that defendant "regularly meets or transacts business within the State of Maryland." The plea alleged that it did not; and the replication traversed that allegation. These pleadings raised an issue of fact, to be tried by a jury or submitted, by consent, to the court. The record fails to show an application by any of the parties for trial of this issue by jury, and it was tried by the court. Under such circumstances we must conclude that the court heard it by consent. The court heard the evidence, and reached a conclusion that the International "did regularly transact business within the State of Maryland." There were no exceptions to testimony, no prayers offered, and no exception challenging the rulings of the court in any manner. The fact finding of the court on this issue is therefore not open for review. The evidence taken is set out at length in the record; and, were we at liberty to pass upon it, we would have no hesitancy in saying that it fully sustains the finding of the court.

The main question, heretofore stated, requires a decision as to the powers of organized labor to compel or coerce action for the benefit of its members. Courts, in deciding cases involving this question, recognizing the possible far-reaching effect of any rule or principle enunciated, should and do approach the question with caution, and have generally refrained from doing more than deciding the case upon its peculiar facts, leaving each succeeding case to be determined in like manner, and giving effect to the development of the law as illustrated by the decisions, and also permitting the court to take cognizance of general conditions as they may exist at the time of the decision; thus enabling the courts to maintain an even balance between the rights of workmen, either individually or in combination, and equal rights guaranteed to all individuals under the law. The line of demar-

cation where one man's rights, natural or legal, may end, because in conflict with the exercise of some right by others, is shadowy, and is not the subject of definement by any general rule. While this is true, it seems to be now definitely settled that there are certain points through which this line must pass, such as that workmen have the undoubted right to organize for the purpose of securing lucrative employment under proper conditions as to working hours and wages; that, in order to enforce such right, they may peaceably strike or quit work, without liability, in cases where there is no contract of employment to the contrary; that what is a legal right of an individual does not become illegal simply because done in combination with others by concerted action. There would seem to be no doubt that laborers working for an employer against whom they had a just or fancied grievance as to hours of work, wages, and the like, about which there was dispute with the employer, and with whom they have no contract as to the term of their employment, are entitled to withdraw, either singly or in combination, for the purpose of coercing their employer into complying with their demands; and even though such quitting results in loss and damage to the employer, it is not an actionable wrong. This must be true, because, when not bound by contract, every free man has a natural right to work for whom he pleases, and to cease to work when he chooses, without liability on his part to the employer. To enforce the opposite view would lead to the establishment of involuntary servitude. Every employer must recognize this right on the part of the employees, and, if by such action loss results, it is *damnum absque injuria.* The employer has the same undoubted right, when not prevented by contract, to discharge the employees, which may, and in many cases does, result in loss and injury to the employee and those dependent upon him; yet this loss and injury, too, must be suffered by the employee without being able to maintain an action therefor against the employer.

The case made out by the declaration here is entirely different from such as above indicated. The allegations of the declaration, which for the purpose of demurrer must be

taken as having been established by competent proof, are, that the plaintiff is a subcontractor employing only union men, having no dispute or controversy with them, or any of the defendants, nor the unions with which the employees are affiliated; that the work being done by the subcontractor was under a contract between it and Culler, this contract providing for the furnishing of material and doing the stone, brick, and tile work in the building of a church at Frederick, for which Culler was the general contractor; that Culler had contracts for the erection of other buildings in and around Frederick, and that he did not employ exclusively union men on these other jobs; that, in order to bring pressure to bear on Culler, for the purpose of compelling him to employ union labor only on his other contracts, the defendants ordered a strike of the employees of the plaintiff; that the plaintiff's employees did strike, quit work, and refuse to return to work unless and until ordered by the defendants; that, after repeated requests by the plaintiff, the defendants refused and failed to order the resumption of work on the part of the plaintiff's employees, which prevented the plaintiff from proceeding with its work in accordance with the terms of its contract with Culler, resulting in the cancellation of the contract by Culler and a notification by him to the plaintiff that he would proceed with the work at the cost and expense of the plaintiff; that, by reason of such acts and refusals on the part of the defendants, the plaintiff suffered great damage, for the recovery of which this suit was instituted.

These facts show a competition between the union, on behalf of its members, and the non-union men who were working for Culler. If these non-union men had been working for the plaintiff, and it had been told by the union that its members would not continue to work while non-union labor was employed on the same job, it would have been legitimate and fair competition, and equivalent to saying that "we will do all of the work which you have on this job, or none," leaving it to the plaintiff to determine which of these two alternatives he would accept. In such case, the grievance or

dispute would be directly with the party against whom the strike was ordered; and it is settled that, under such circumstances, the plaintiff would have no right of action against the union. But this is not what was done. The injury to the plaintiff which arose from the strike was inflicted upon it, an innocent party, in order to compel it to coerce the general contractor, Culler. The plaintiff may have been in entire sympathy with union labor, and the allegations of the bill indicate that it was; yet it had no power to coerce its general contractor into employing only union men. The real grievance of the union was not with the plaintiff, but with Culler for his not unionizing his work; and the plaintiff is the innocent victim of such action on the part of the defendants. Again, if the plaintiff could have taken such coercive measures as to compel Culler to employ union men, he had the undoubted right to elect not to do so, and that without any right on the part of the defendants to penalize him for such failure. The defendants owed to the plaintiff the duty of non-interference with the conduct of its work or employees, so long as there was no contention or dispute with it. It is an effort by the defendants to obtain a decision in their favor as against Culler, by forcing an innocent third party, the plaintiff, which has no interest in the dispute, to coerce Culler to accede to the defendants' demands. Such a strike is not a justifiable interference with the right of the plaintiff to pursue its calling without entanglement, by reason of the fact that Culler does not employ exclusively union labor. In our opinion, organized labor's right of coercion and compulsion is limited to strikes on persons with whom the organization has a trade dispute; or, as stated by the Supreme Judicial Court of Massachusetts in *Pickett v. Walsh,* 192 Mass. 587, 78 N. E. 753, 760: "A strike on A, with whom the striker has no trade dispute, to compel A to force B to yield to the strikers' demands, is an unjustifiable interference with the right of A to pursue his calling as he thinks best." See *Lucke v. Clothing Cutters' Assembly,* 77 Md. 396, 26 A. 505; *My Maryland Lodge v. Adt,* 100 Md. 238, 59 A. 721; *Klingel's Pharmacy v. Sharp & Dohme,* 104 Md. 218, 64

A. 1929; *Acker, Merrall & C. Co. v. McGaw*, 106 Md. 536, 68 A. 17; *Sumwalt Ice Co. v. Knickerbocker Ice Co.*, 114 Md. 403, 80 A. 48; *Gray v. Building Trades Council*, 91 Minn. 171, 97 N. W. 663; *Purington v. Hinchliff*, 219 Ill. 159, 76 N. E. 47; *Beck v. Ry. Teamsters' Union*, 118 Mich. 497, 77 N. W. 13; *Crump's Case*, 84 Va. 927, 6 S. E. 620; *State v. Glidden*, 55 Conn. 46, 8 A. 890; *Walker v. Cronin*, 107 Mass. 555; *Martell v. White*, 185 Mass. 255, 69 N. E. 1085; *Burnham v. Dowd*, 217 Mass. 351, 104 N. E. 841; *New England Cement Gun Co. v. McGivern*, 218 Mass. 198, 105 N. E. 885..

It is contended by the appellants that the union employees of the plaintiff had the right to quit work without assigning any reason or being liable for any loss flowing from such action, and, that being true, the defendants International and Union No. 7 are the agents of the individual members, and therefore, when they acted upon the orders of the International, their agent, it was equivalent to their acting upon their own will and pleasure. While this is an ingenious argument, we do not think the position taken is tenable, first, because, if the plaintiff's employees refused to obey the orders of the International and go on strike, they were subject to fines and penalties, or even expulsion; and, second, even if we admit that an unincorporated association is the agent of each of its individual members, which we do not decide, entertaining the views hereinbefore expressed, holding that organized labor's right of coercion and compulsion is limited to strikes on persons with whom the organization has a trade dispute, it would apply to the principals as well as to the agent.

Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*